# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

MARK ALLEN ACKLEY, JR.,

      Defendant.

No. 16-CR-3022-CJW-MAR

**MEMORANDUM
OPINION AND ORDER**

## I.    INTRODUCTION

This matter is before the Court on defendant's Amended Motion for Compassionate Release filed on June 24, 2020.  (Doc. 41).  In support of his motion, defendant filed a brief under *Anders v. California*, 386 U.S. 738 (1967).  (Doc. 42).  On June 30, 2020, the government timely filed a brief in resistance.  (Doc. 45).  Defendant has not yet filed a reply, but the Court need not wait.  *See* LR 7(g).  Oral argument was not requested and is not necessary.  *See* LR 7(c).  For the following reasons, the Court **denies** defendant's motion.

## II.    RELEVANT BACKGROUND

From 2014 to October 21, 2015, defendant and others conspired to distribute methamphetamine.  (Doc. 23, at 40).  Based on text messages from defendant's phone, officers found defendant was involved in distributing at least 35 grams but less than 50 grams of actual (pure) methamphetamine.  (*Id.*).  From August to October 2015, defendant was involved in multiple methamphetamine transactions with confidential informants ("CI"), both as a dealer and as a supplier.  (*Id.*).  One dealer described defendant as "the boss," stating that "all of the drug deals had to go through" him.  (*Id.*).

On December 3, 2015, K.S. was arrested and identified defendant as a methamphetamine distributor. (*Id.*, at 5). K.S. stated defendant "was in charge of the methamphetamine sales" and that he had multiple people working under him. (*Id.*, at 6). K.S. also stated defendant travelled to Minnesota to pick up his methamphetamine supply. (*Id.*).

On June 22, 2016, the government filed an Information charging defendant with one count of conspiracy to distribute methamphetamine in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B), and 846. (Doc. 2). That same day, defendant waived indictment. (Doc. 3). On July 21, 2016, defendant pleaded not guilty and was detained. (Doc. 9). On August 1, 2016, defendant changed his plea to guilty pursuant to a plea agreement with the government. (Docs. 13–1 & 15). On August 16, 2016, the Court accepted defendant's plea. (Doc. 20).

On October 27, 2016, the United States Probation Office ("USPO") filed defendant's final presentence investigation report ("PSR"). (Doc. 23). Defendant was, at that time, 27 years old and residing in Iowa, where he was also born. (*Id.*, at 2). Defendant's parents shared joint custody of him during his upbringing. (*Id.*, at 10). He reported he was bullied in school and that his stepmother was verbally abusive. (*Id.*). Defendant advised that his father and stepmother used marijuana and methamphetamine until they were arrested in 2001 and that his mother abused alcohol until 2014. (*Id.*). Defendant graduated high school with a 1.24 grade point average. (*Id.*, at 12). His work history was inconsistent with long gaps of unemployment. (*Id.*, at 12–13). Defendant was unemployed for approximately the last year, at least, immediately preceding sentencing. (*Id.*). Defendant had a toddler-age child with his live-in girlfriend. (*Id.*, at 10). Defendant described his girlfriend as an abuser of alcohol, methamphetamine, and cocaine and stated she mentally abused him by refusing to put his name on their child's birth certificate or let him see their child regularly. (*Id.*). Defendant's criminal history was relatively small but significant. His relevant criminal convictions include possession

of drug paraphernalia, operating while intoxicated, driving on a suspended license twice, and delivery of methamphetamine. (*Id.*, at 7–8). The latter conviction occurred in 2012, wherein defendant sold methamphetamine and marijuana to a CI. (*Id.*, at 8).

Defendant had a history of pulmonary embolism and had also been treated for left leg deep vein thrombosis. (*Id.*, at 11). Records also reflected he had asthma. (*Id.*). Defendant was diagnosed with mood disorder, major depressive disorder, anxiety, borderline personality disorder, and attention deficient hyperactivity disorder. (*Id.*). Records reflect defendant admitted to cutting and burning himself at age 13, playing Russian roulette with a loaded gun, and biting down on a metal rod he stuck into an electrical outlet. (*Id.*). He also committed animal cruelty "a few times." (*Id.*). Defendant reported fluctuating but heavy alcohol, marijuana and methamphetamine abuse, the former two starting when he was a child. (*Id.*, at 11–12). He had also abused prescription pain medications, used heroin a handful of times, and tried mushrooms and acid as a teenager. (*Id.*, at 12). Defendant was diagnosed with cannabis dependence and alcohol abuse. (*Id.*). He enrolled in drug treatment but was unable to complete the program before being incarcerated. (*Id.*).

Defendant was in criminal history category III with a total offense level of 28, yielding an advisory guideline range of imprisonment of 97 to 121 months followed by four to five years on supervised release. (Doc. 23, at 14). On December 19, 2016, the Court sentenced defendant to 121 months' imprisonment followed by five years on supervised release. (Docs. 31 & 32). Defendant is currently incarcerated at FPC Duluth with a projected release date of July 2, 2024. (Doc. 42, at 1).

### III. COMPASSIONATE RELEASE STANDARDS

A court's ability to modify a sentence after it has been imposed is limited. Title 18, United States Code, Section 3582(c)(1)(A) allows a court to modify a sentence through "compassionate release." A defendant may directly petition the court for

3

compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the [Bureau of Prisons] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). The court may only reduce the defendant's sentence, however, after considering the factors set forth in Title 18, United States Code, Section 3553(a) to the extent they are applicable, and finding that:

> (i) extraordinary and compelling reasons warrant such a reduction; or

> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [Bureau of Prisons] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A). Defendants bear the burden of establishing eligibility for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

The starting point in determining what constitutes "extraordinary and compelling reasons" under Section 3582(c)(1)(A)(i) is the United States Sentencing Guideline ("USSG") discussing compassionate release. *See* USSG §1B1.13; *see also United States v. Rivernider*, No. CR10-222, 2019 WL 3816671, at \*2 (D. Conn. Aug. 14, 2019). USSG Section 1B1.13 provides extraordinary and compelling reasons exist when the defendant is (1) suffering from a terminal illness; (2) suffering from a serious physical or medical condition, a functional or cognitive impairment, or physically or mentally deterioration due to aging which substantially diminishes the defendant's ability to care for themselves within the facility and from which the defendant is not expected to recover; (3) at least 65 years old, experiencing serious deterioration due to age, and has served at least 10 years or 75 percent of their sentence; (4) experiencing a change in family

circumstances, namely the death or incapacitation of the caregiver of the defendant's minor child or the incapacitation of the defendant's spouse who now requires the defendant's care; (5) some other extraordinary and compelling reason as determined by the Director of the Bureau of Prisons ("BOP").

Courts are split on whether the policy statement is binding because it predates the First Step Act of 2018's changes to Section 3582(c)(1)(A). *Compare United States v. Lynn*, No. CR89-0072, 2019 WL 3805349, at *4 (S.D. Ala. Aug. 13, 2019), *with United States v. Urkevich*, No. CR03-37, 2019 WL 6037391, at *3 (D. Neb. Nov. 14, 2019). This Court has concluded USSG Section 1B1.13, although it is a helpful guidepost, does not restrain a court's assessment of whether extraordinary and compelling reasons exist to release a defendant. *See United States v. Burnside*, No. 6:18-CR-2068-CJW-MAR, 2020 WL 3443944, at *3–4 (N.D. Iowa June 18, 2020) (compiling cases).

## IV.    DISCUSSION

### A.    *Exhaustion of Administrative Remedies*

Section 3582(c)(1)(A) states a court may reduce a term of imprisonment after the defendant exhausts all administrative remedies within the BOP or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]"   This Court has held defendants are not required to administratively appeal a warden's denial and may fulfill the exhaustion requirement of Section 3582(c)(1)(A) by waiting 30 days from the date the warden receives their request before filing a motion in the courts. *See Burnside*, 2020 WL 3443944, at *4–7.

On May 26, 2020, defendant swore in an affidavit that he submitted a request for release to FPC Duluth's warden more than 30 days ago.  (Doc. 42, at 2–5); *see also* (Doc. 36, at 13).  Defendant stated that on April 22, 2020, FPC Duluth's warden told him and other inmates "that the warden would not consider any compassionate release requests so inmates should file [their] motions in the district courts."  (Doc. 42, at 2).

The Court finds defendant has not met his burden to show he exhausted his administrative remedies. *See United States v. Kinley*, No. 1:16-cr-10018-002, 2020 WL 2744110, at *2 (W.D. Ark. Apr. 17, 2020) ("Defendant bears the burden of showing that he exhausted his administrative remedies with the BOP before filing a compassionate-release motion."). Nothing in the record—not a screenshotted email, photocopied request, receipt notice, or any other evidence—supports defendant's assertion aside from his affidavit. Further, his affidavit does not precisely state when his request was allegedly submitted or when the warden received it. A defendant's affidavit without more is not sufficient to fulfill the exhaustion requirement of 3582(c)(1)(A). *See United States v. Cain*, No. 1:16-cr-00103-JAW-1, 2020 WL 3064427, at *2–3 (D. Me. June 9, 2020) (holding the defendant's affidavit was insufficient for exhaustion in part because it failed to attach his alleged requests for release or establish when they were received by the warden); *see also United States v. Ness*, 2:18-cr-1024-CJW-MAR-1 (Doc. 67, at 5–6) (holding the defendant failed to show exhaustion based on only his word that his request for release was submitted earlier than it was dated).

Thus, the Court **denies** defendant's motion on this issue. In the alternative, the Court will independently consider the merits of defendant's motion as if he had fulfilled the exhaustion requirement.

### B.    *Extraordinary and Compelling Reason*

Defendant argues an extraordinary and compelling reason for release is present because his medical conditions put him at a high risk of severe complications and death if exposed to COVID-19. (Doc. 42, at 6–9). The presence of COVID-19 at a defendant's specific facility or within the BOP generally can constitute an extraordinary and compelling reason for compassionate release if the defendant is particularly susceptible to COVID-19 due to their age or underlying health conditions. *See Burnside*, 2020 WL 3443944, at *7 (compiling cases); *see also People Who are at Increased Risk for Severe*

6

*Illness*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions-/people-at-increased-risk.html.

The record overwhelmingly shows defendant's health conditions are minor and do not significantly elevate his risk amid the pandemic. When he arrived at the BOP, defendant was classified as a Care Level 3 inmate requiring chronic care. (Doc. 42–1, at 107). The BOP quickly determined defendant did not need chronic care or any further treatment. (*Id.*). Thus, defendant was re-designated to Care Level 1. (*Id.*, at 106). Defendant's blood tests are within normal range. (*Id.*, at 76, 79). Defendant is obese with a body mass index of 32.2, which puts him only marginally into the CDC's risk category. (*Id.*, at 52, 63, 116, 142); *see also People of Any Age with Underlying Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions-/people-with-medical-conditions.html. The BOP lists his chronic embolism, deep vein thrombosis, and asthma as being resolved. (*Id.*, at 64, 65, 150, 151). It appears defendant does not take any medications. (*Id.*, at 55–57, 74–75, 125, 137–39). It appears defendant does not have an inhaler and, even if he did, his need for it would only be occasional. (*Id.*, at 125). His asthma is listed as mild. (*Id.*). In February 2020, the BOP determined defendant did not require any chronic treatment and defendant did not report any new health care needs or COVID-19 symptoms. (*Id.*, at 116, 124, 125, 183). In May 2020, defendant noted his asthma, pulmonary embolisms, and shortness of breath when walking up inclines on a job application. (*Id.*, at 159–63). Defendant did not report any other health issues. (*Id.*). The BOP recently gave defendant a respirator and trained him on how to use it. (*Id.*, at 163–64). Moreover, defendant is only 31 years old. (Doc. 23, at 2). In short, defendant's health care needs appear to be minimal and well-addressed by the BOP. Defendant only marginally meets one of the CDC's risk categories. The Court has no reason to believe defendant is at significant risk at this time. Moreover, defendant's risk of exposure is also low. FPC Duluth currently has no

active cases of COVID-19 among its inmate population. *COVID-19*, BOP, https://www.bop.gov/coronavirus/.

Thus, the Court finds defendant has not presented an extraordinary and compelling reason for release and **denies** his motion on this basis.  In the alternative, the Court will independently discuss the Section 3553(a) factors as if defendant had presented an extraordinary and compelling reason for release.

### C.     *Section 3553(a) Factors and Danger to Community*

Guideline Section 1B1.13(2) provides compassionate release is appropriate only when "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]"  Section 3582(c)(1)(A) requires a court to consider the factors set forth in Title 18, United States Code, Section 3553(a) before granting compassionate release.  Section 3553(a) requires the Court to consider: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and provide rehabilitative opportunities and care to the defendant; (3) the kinds of sentences available; (4) the sentencing range as set by the USSG; (5) any pertinent policy by the United States Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities among similarly situated defendants; and (7) the need for restitution to any victims.

Here, the 3553(a) factors weigh against defendant's release.  Defendant has only completed approximately half his sentence.  The Court acknowledges defendant has had no disciplinary reports and has taken classes while incarcerated.  (Docs. 42–3 & 42–4).  Defendant's struggles with mental health and his upbringing are also mitigating to some extent.  The underlying facts here, however, show that defendant was the ringleader of a conspiracy to distribute methamphetamine.  Defendant travelled to acquire methamphetamine, supplied methamphetamine to multiple dealers, and sold

8

methamphetamine himself. He engaged in this conduct while on probation for his 2012 conviction for delivery of methamphetamine and marijuana, for which he received a 10-year suspended sentence. (Doc. 23, at 8). Releasing defendant now would undermine the goal of deterring him and others similarly situated from engaging in this type of criminal conduct, thus threatening the public with repeated criminal conduct. It would also undermine respect for the law and be contrary to justice.

Thus, the Court finds the 3553(a) factors do not warrant release and **denies** defendant's motion on this basis.

### V.    CONCLUSION

Defendant has failed to exhaust administrative remedies, identify an extraordinary and compelling reason for release, or show that the 3553(a) factors favor release. Thus, for the reasons discussed above, defendant's Amended Motion for Compassionate Release is **denied**. (Doc. 41).[1] Defendant must serve the remainder of his term of incarceration as previously directed. (Doc. 32).

**IT IS SO ORDERED** this 21st day of July, 2020.

_____
C.J. Williams
United States District Judge
Northern District of Iowa

---

[1] To the extent defendant's original Motion for Compassionate Release (Doc. 36) is not superseded by his amended motion, the Court **denies** it as duplicative.